## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JOSHUA PENDLETON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **vs.** | ) | **(Unlawful Credit Reporting)** |
| | ) | |
| **(1) WAYPOINT RESOURCE GROUP, LLC,** | ) | **Case No.: 19-cv-417-JED-FHM** |
| **(2) EQUIFAX INFORMATION SERVICES LLC,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff, Joshua Pendleton, and for his Complaint against Defendants, Waypoint Resource Group, LLC ("Waypoint") and Equifax Information Services, LLC ("Equifax") alleges as follows:

### BRIEF OVERVIEW

Plaintiff closed an Internet account with Charter Communications when he moved from Alabama to Oklahoma. He was assured at that time that there was nothing owed on his account and, in fact, that Charter Communications would be issuing a refund check to him. Despite these assurances, several months later, debt collector Waypoint began reporting a debt allegedly owed to Charter Communications to Plaintiff's credit report maintained by Equifax. Plaintiff disputed the account in writing with Equifax, eventually involving submitting a complaint to the Consumer Financial Protection Bureau. In response to Plaintiff's dispute, Equifax reported to the Consumer Financial Protection Bureau that based on its investigation, Equifax had removed the Waypoint account from Plaintiff's Equifax credit report. However, just weeks later, Equifax allowed Waypoint to reinsert the same, erroneous information to Plaintiff's credit report.

**JURISDICTION**

1.      This is an action for actual, statutory and punitive damages brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. §1681 et. seq [hereinafter "FCRA"]) and common law defamation against both defendants and for actual and statutory damages under the Fair Debt Collection Practices Act, codified 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA") against Defendant Waypoint.

2.      This Honorable Court has subject matter jurisdiction over this action. This Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, and under federal law. 28 U.S.C. §§ 1331, 1337. Further, Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over all non-federal claims as this set of allegations and claims constitute a single action and should be heard in the same cause. 28 U.S.C. § 1367.

**VENUE**

3.      The Plaintiff is a natural person and legal resident of Tulsa, Oklahoma.  Venue is proper before this court pursuant to 28 U.S.C. 1391(b) as the Defendants conduct business in Oklahoma, and a substantial part of the events or omissions giving rise to the claims herein occurred in Oklahoma.

4.      Defendant Waypoint Resource Group, LLC ("Waypoint") is a foreign corporation that provides credit accounts to consumers throughout the United States, including in Oklahoma. Defendant is a "furnisher of information" as contemplated by FCRA, 15, U.S.C. §1681s-2(a) & (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

COMPLAINT                                                                                        2

5.      Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency that regularly conducts business in the Eastern District of Oklahoma, and which has a principal place of business located at 1550 Peachtree Street, N.W. Atlanta, Georgia 30309.

6.      Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7.      Defendants have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties ("inaccurate information").

8.      The inaccurate information includes, but is not limited to, an alleged debt owed by Plaintiff to Waypoint Resource Group, LLC, which was allegedly assigned to it by Charter/Brighthouse Communications for internet services.

9.      Plaintiff moved from Birmingham, Alabama to Tulsa, Oklahoma during early June, 2018. As a part of this process, Plaintiff contacted Charter Communications to disconnect his internet service.  During this call, Plaintiff confirmed with the Charter Communications representative that no further action was needed on his part, and that the service was disconnected, and the account was closed. Charter Communications' representative told Plaintiff that based on the company's records, there was some money owed back to Plaintiff, and that he should expect a check from them sometime in the future.

10.     On November 5, 2018, Plaintiff received a notice from a credit monitoring service that a new collection account from defendant Waypoint had been added to his Equifax credit report regarding Charter Communications.

11.     In response to this notice, Plaintiff filed a dispute on November 29, 2018, with Equifax through their website to dispute the information submitted by defendant Waypoint. (Equifax Confirmation # 8309075119).

12.     On December 22, 2018, Plaintiff received an email from Equifax stating that his dispute had been completed. According to Equifax the information submitted by defendant Waypoint was accurate and was *not removed* from Plaintiff's credit report. Defendant Equifax added information to Plaintiff's credit report that the information submitted by defendant Waypoint was disputed by Plaintiff and the account was in collections.

13.     After receiving this notice, on December 22, 2018, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") concerning Equifax's inappropriate response to the disputed item.

14.     On January 3, 2019, the CFPB told Plaintiff that Equifax was still working on the issue.

15.     On February 17, 2019, Equifax responded to the CFPB complaint, stating that Equifax had instituted an investigation and based on that investigation, it removed the item from Plaintiff's credit report.

16.     Equifax further stated that the results of its investigation was mailed to Plaintiff. However, Plaintiff never received the results of the Equifax investigation which resulted in the removal of the information submitted by Defendant Waypoint.

17.     On February 24, 2019, Plaintiff received a notice from his credit monitoring service stating that defendant Waypoint had once again added the same debt to Plaintiff's credit report with Equifax.

18.     In response to receiving this notice, Plaintiff called defendant Equifax to discuss the item reappearing on his credit report. The Equifax employee that Plaintiff spoke with told Plaintiff that while the account was "verified as fraudulent," and previously removed, because defendant Waypoint had again reported the information to Equifax, the information was once again appearing on his credit report.

19.     During this call, Equifax told Plaintiff that it could not remove the item again, and that the only option was to file another dispute. Plaintiff asked to speak with an Equifax manager and was placed on hold. Upon speaking with the Equifax manager, Equifax again told Plaintiff that they could not remove the item and that the only option for Plaintiff was to file a second dispute.

20.     In response, Plaintiff asked to go ahead to file a second dispute, which was opened with the Equifax number assigned 905-501-3301. Plaintiff then requested a copy of his consumer disclosure file. The Equifax employee Plaintiff that he could only receive a copy of his credit report, not his consumer disclosure file.

21.     Plaintiff was again placed on hold after requesting to speak with the manager. After a 20-minute wait, Plaintiff was connected with Equifax manager "Fabian" who assured Plaintiff that his consumer disclosure file would be mailed to Plaintiff and provided Plaintiff with the confirmation number of 905-501-7730.

22.     Plaintiff revisited the initial dispute issue with "Fabian" who told Plaintiff that the actions of defendant Waypoint was not expected based on the results of the initial dispute. Fabian added that defendant Waypoint should not have reported the item after it had been removed and confirmed by Equifax as fraudulent. Lastly, Fabian told Plaintiff that he was within his rights for seeking legal action for illicit activity.

23.    Plaintiff's credit reports and file have been obtained from Defendant Equifax and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

24.    The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness. On February 25, 2019, Plaintiff received a denial letter from American Express, refusing to extend Plaintiff credit, citing Plaintiff FICO score, and too many negative accounts. Plaintiff had applied for credit on or around January 19, 2019. The only negative account appearing on Plaintiff's credit report was the account reported by defendant Waypoint.

25.    Defendants have been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that Defendant Equifax has disseminated to various persons and credit grantors, both known and unknown.

26.    Plaintiff has disputed the inaccurate information with Defendants by written communication to its representatives and by following Defendant' Equifax's established procedures for disputing consumer credit information.

27.    Notwithstanding his efforts and notwithstanding Defendant Equifax responses to Plaintiff indicating it deleted Waypoint's inaccurate tradelines, Defendant accepted defendant Waypoint's request to republishing the same account after the information had been removed by defendant Equifax. Defendant Equifax then published such inaccurate information to other third parties, persons, entities and credit grantors.

28.     Despite Plaintiff's efforts, Defendant Equifax has never: (1) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's disputes; (2) contacted any third parties that would have relevant information concerning Plaintiff's disputes; (3) forwarded any relevant information concerning Plaintiff's disputes to the entities originally furnishing the inaccurate information; and (4) requested or obtained any credit applications, or other relevant documents from the entities furnishing the inaccurate information.

29.     Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently failed to perform reasonable investigations and/or reinvestigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to report on the results of their investigations and/or reinvestigations to all credit reporting agencies, and have continued to report the derogatory inaccurate information about the Plaintiff.

30.     As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, credit denials, increased annual percentage rates, increased interest rates, harm to credit reputation and credit score, as well as intangible damages including anger, anxiety, emotional distress, fear, frustration of trying to set the record straight, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

31.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

32.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## COUNT I

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY WAYPOINT

33.     Mr. Pendleton realleges the above paragraphs as if recited verbatim.

34.     After being informed by Equifax of Mr. Pendleton's consumer dispute to the debt reported by Waypoint (the "Trade Line"), Waypoint negligently failed to conduct a proper reinvestigation of Mr. Pendleton's dispute as required by 15 U.S.C. §1681s-2(b)[1].

35.     Waypoint negligently failed to review all relevant information available to it in conducting its reinvestigation as required by 15 U.S.C. 1681s-2(b). Specifically, Waypoint continued to report to Plaintiff's credit reports, including Defendant Equifax, that Plaintiff had an outstanding collection balance.

36.     The Trade Line is inaccurate and creating a misleading impression on Mr. Pendleton's consumer credit file with Equifax.

---

[1] 15 U.S.C. 1681s-2(b) Duties of Furnishers of Information Upon Notice of Dispute
(1) In general
After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

37.     As a direct and proximate cause of Waypoint's negligent failure to perform its duties under the FCRA, Mr. Pendleton has suffered actual damages, including out-of-pocket losses, credit denials, loss of time, and harm to quality-of-life, mental anguish, suffering, humiliation and embarrassment.

38.     Waypoint is liable to Mr. Pendleton by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 U.S.C. 1681o.

39.     The Plaintiff has a private right of action to assert claims against Waypoint arising under 15 U.S.C. 1681s-2(b).

## COUNT II

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY WAYPOINT

40.     Plaintiff realleges the above paragraphs as if recited verbatim.

41.     After being informed of the inaccurate account information by Mr. Pendleton, Waypoint willfully failed to conduct a proper reinvestigation of Mr. Pendleton's dispute, and willfully re-inserted this false information to Mr. Pendleton's credit reports, including with Defendant Equifax.

42.     Waypoint willfully failed to review all relevant information available as required by 15 U.S.C. 1681s-2(b).

43.     As a direct and proximate cause of Waypoint's willful failure to perform its respective duties under the FCRA, Mr. Pendleton has suffered actual damages, including out-of-pocket losses, credit denials, loss of time, and harm to quality-of-life, mental anguish, suffering, humiliation and embarrassment.

44.     Waypoint is liable to Mr. Pendleton for either statutory damages or actual damages he has sustained by reason of its violations of the FCRA in an amount to be determined by the trier fact, together with an award of punitive damages for the reckless disregard for a Plaintiff's rights in the amount to be determined by the trier of fact, as well as for reasonable attorneys' fees and costs.

## COUNT III

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, (FDCPA), 15 U.S.C. § 1692 et seq. BY WAYPOINT

45.     Defendant Waypoint is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a defaulted, consumer debt from Plaintiff.

46.     On February 26, 2019, Defendant Waypoint reported factually inaccurate information to Defendant Equifax regarding the account sought by Defendant Waypoint.

47.     Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

48.     Defendant materially lowered Plaintiff's credit score inserting the information to Plaintiff's credit report.

49.     15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(8) Communicating or threatening to communicate to any person credit information which is known or which**

**should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

50.     When Defendant Waypoint re-reported the alleged debt to Plaintiff's credit reports in February, 2019, Defendant knew or should have known that the information was inaccurate as Defendant Equifax had previously deleted the information from Plaintiff's credit report and, upon information and belief, provided notice of the removal of the inaccurate information to Defendant Waypoint.

51.     Defendant violated §1692e(8) of the FDCPA by communicating false credit information to Plaintiff's credit reporting bureaus.

## COUNT IV

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. 1681(i) BY EQUIFAX

52.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

53.     At all times pertinent hereto, Defendant Equifax was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

54.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

55.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

56.     Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681e, 1681i, 1681i(a)(1) and 1681i(a)(5)(A).

57.     The conduct of Defendant Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT V

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b) BY EQUIFAX

58.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

59.     After notification to delete the erroneous payment history on Plaintiff's credit report from the CFPB and Plaintiff, Defendant Equifax removed the information from Plaintiff's credit report in February, 2019.

60.     Defendant Equifax subsequently reinserted the erroneous payment history onto Plaintiff's credit reports.

61.     Defendant Equifax did not send Plaintiff any notification, as required by the FCRA, that Defendant was reinserting the previously deleted erroneous information onto Plaintiff's credit report.

62.     Upon information and belief, Defendant did not obtain certification from Defendant Waypoint that the information being reinserted onto Plaintiff's credit report was accurate and complete.

63.     Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant Equifax is liable to the Plaintiff for engaging in the following conduct willfully and negligently: failing to employ

COMPLAINT                                                                    12

and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. § 1681e(b). [2]

64.     The conduct of Defendant Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT VI

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i BY EQUIFAX

65.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66.     Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant is liable to the Plaintiff for engaging in the following conduct willfully and negligently: reinserting previously deleted tradelines into Plaintiff's credit report, information and file, and failing to provide Plaintiff written notification no later than five business days after the reinsertion in violation of 15 U.S.C. § 1681(i)(a)(5)(B).

67.     Pursuant to 15 U.S.C. §1681n and 15 U.S.C. § 1681o, Defendant is liable to the Plaintiff for engaging in the following conduct willfully and negligently:  failing to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's consumer file and in

---

[2] 15 U.S.C. 1681e(b) entitled Compliance Procedures states:
(b) Accuracy of report
Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

his consumer reports of information that was previously deleted in violation of 15 U.S.C.
§1681(i)(a)(5)(C).

68.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**COUNT VII**

**DEFAMATION BY ALL DEFENDANTS**

69.     Mr. Pendleton realleges the above paragraphs as if recited verbatim.

70.     At all times pertinent hereto, Equifax and Waypoint were publishing statements that were false and negative representations concerning Mr. Pendleton's credit information and history.

71.     The conduct of Equifax and Waypoint was a direct and proximate cause as well as a substantial factor in bringing about the serious injuries, damages, and harm sustained by Plaintiff, and as a result, Equifax and Waypoint are liable to compensate Mr. Pendleton for the full amount of actual, statutory, and punitive damages as allowed by law.

**DEMAND FOR JUDGMENT FOR RELIEF**

Accordingly, Joshua Pendleton requests that the Court grant him the following relief against the Defendant **Waypoint**:

a.     Actual damages allowed under common law, the FCRA and the FDCPA.

b.     Statutory damages allowed under the FCRA and the FDCPA.

c.     Punitive Damages allowed under common law.

COMPLAINT                                        14

      d.      Statutory costs and attorney fees.

Joshua Pendleton requests that the Court grant him the following relief against the

Defendant **Equifax**:

      a.      Actual damages allowed under common law, the FCRA.

      b.      Statutory damages allowed under the FCRA.

      c.      Punitive Damages allowed under common law.

      d.      Statutory costs and attorney fees.

Respectfully Submitted,

/s/ Victor R. Wandres
Victor R. Wandres, OBA #19591
P A R A M O U N T   L A W
4835 S. Peoria Avenue, Suite One
Tulsa, OK 74105
(918) 200-9272 voice
(918) 895-9774 fax
victor@paramount-law.net

COMPLAINT           15